UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GERALD L. REEVES,

      Plaintiff,

   v.

ANDREW SAUL, Acting Commissioner of Social Security,[1]

      Defendant.

Case No. 2:18-cv-01174-GMN-EJY

**REPORT AND RECOMMENDATION**

Re: Plaintiff's Motion for Summary Judgment and Memorandum in Support Thereof
(ECF Nos. 21 and 22)

      Plaintiff Gerald L. Reeves ("Plaintiff") seeks summary judgment in his favor and to reverse or remand the previous administrative decision in which the Commissioner of the Social Security Administration ("Commissioner" or the "Defendant") denied Plaintiff's application for disability insurance ("DIB") and supplemental security income ("SSI") under Sections 216(i), 22, 1161, and 1614 of the Social Security Act. The Court recommends that the Commissioner's decision be remanded to the Social Security Administration consistent with this Report and Recommendation for the reasons stated below.

## I. BACKGROUND

      On September 15, 2014, Plaintiff filed applications for Title II DIB. On April 6, 2015, Plaintiff filed a Title XVI application for SSI. In both application, Plaintiff claims disability beginning on October 13, 2013. Administrative Record ("AR") 44. The parties do not dispute that, under Title II DIB, Plaintiff's records show he has acquired sufficient quarters of coverage to remain insured through March 31, 2019 under Title II. The Commissioner denied Plaintiff's claims by initial determination on February 23, 2015, and upon reconsideration on July 23, 2015. *Id.* Plaintiff requested an administrative hearing on July 30, 2015, and the hearing took place before the Administrative Law Judge ("ALJ") on October 27, 2016. *Id.* The ALJ issued his determination that

---

[1]     Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Plaintiff was not disabled on February 27, 2017. AR 53. On March 26, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR 25-27. This civil action followed.

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, courts must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, a court may not reverse an ALJ's decision based on an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)    the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).[2]  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five.  *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(b).

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(e).

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy

---

[2]    All citations herein are to the regulations in effect at the time of the ALJ's June 3, 2016 decision.

that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id.*

*Id.* at 1098–99 (internal alterations omitted).

**B.**    **The ALJ's Findings**

At step one of the sequential evaluation the ALJ found that Plaintiff did not engage in substantial gainful activity since October 13, 2013, the alleged onset date of disability.  AR 46.  The second step finding by the ALJ states that Plaintiff "has the following severe combination of impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the thoracic spine and depressive disorder."  *Id.*  The ALJ concluded that these impairments "are more than slight abnormalities and have more than a minimal effect on … [Plaintiff's] ability to do basic physical or mental work activities when taken in combination."  *Id.*

With respect to this determination, the ALJ stated he considered Plaintiff's severe and nonsevere medically determinable impairments including the degenerative disc disease ("DDD") of the lumbar and thoracic spine and Plaintiff's "reported depressive symptoms."  AR 47.  Despite the finding of severity of Plaintiff's depressive symptoms, the ALJ incongruously states that "there is minimal objective evidence of the claimant seeing a psychiatrist consistently, being hospitalized for psychiatric treatment, or receiving any consistent specialized psychiatric care.  This is inconsistent with the alleged severity of the claimant's mental symptoms and functional limitations.  Mental status examination were mostly normal."  *Id.*  The ALJ then concludes that "based on the minimal and unremarkable mental health evidence in the record, … [Plaintiff] had no severe mental impairment."  *Id.*  This, again, is inconsistent with the "severity" finding at AR 46.  Finally, the ALJ states that "the four broad functional areas set out in the disability regulations for evaluating mental disorders … known as the 'paragraph B' criteria … are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation

process. … [A] steps 4 and 5 of the sequential evaluation process … a more detailed assessment … of the adult mental disorders listings" is required.  *Id*.  Thus, the ALJ's RFC "assessment reflects the degree of limitations … found in the 'paragraph B' mental function analysis."  *Id*.

At the third step of the sequential evaluation process the ALJ states that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairment" in the Code of Federal Regulation.  AR 47.  The ALJ concluded that whether considered singularly or in combination, Plaintiff's impairments "do not meet or medically equal the criteria of any medical listing."  AR 48.  This determination appears to be based on the ALJ's statement that "[n]o treating or examining physician … recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment."  *Id*.

Before considering step four, the ALJ found that Plaintiff has a residual functional capacity ("RFC")[3] to "perform sedentary work … specifically as follows: [Plaintiff] can lift and carry ten pounds occasionally and five pounds frequently; [Plaintiff] can stand and/or walk two hours in an eight-hour workday and sit for six hours in an eight-hour workday; [Plaintiff] can perform occasional postural activities; [Plaintiff] cannot climb ladders, ropes or scaffolds and … is limited to simple repetitive tasks."  AR 48.  The ALJ states he has considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence[,] … other evidence[, … and] opinion evidence" in accordance with the Code of Federal Regulations and Social Security Rulings.  *Id*.

When considering Plaintiff's symptoms, the ALJ discussed Plaintiff's testimony and states Plaintiff "suffered from neck and back pain … reported depression which is somewhat helped with medication … [and] right hand numbness," as well as being "able to prepare simple meals, use the computer and watch television."  *Id*.  The ALJ also states he "considered the function report, headache questionnaire and statements completed by" Plaintiff.  AR 48 citing AR 338-346, 355-56.  This led the ALJ to conclude that Plaintiff's "medically determinable impairments could reasonably

---

[3]      "Residual functional capacity" is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

be expected to cause … [Plaintiff's] alleged symptoms." *Id.*  The ALJ next found Plaintiff's claims regarding "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  AR 48-49; *see also* AR 50-51.

After summarizing the medical evidence upon which he relied (AR 49-50), the ALJ concluded that Plaintiff's "subjective complaints are not consistent with the entirety of the medical evidence [and that t]he objective medical evidence does not support the alleged severity of symptoms" Plaintiff reports.  AR 50-51.  Thus, the ALJ states that Plaintiff "has not been deprived of the ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since the alleged onset date."  AR 51.

Under step four, the ALJ found that Plaintiff cannot perform any past relevant work. However, at step five, based on his age, education, work experience, ability to communicate in English, and RFC, "in conjunction with the Medical-Vocational Guidelines" and testimony from the Vocational Expert ("VE"),  Plaintiff "would be able to perform the requirements of representative occupations such as a jewelry preparer, a document preparer and an order clerk." *Id.* at 51-52.  Each of these positions was determined to be an unskilled occupation with positions available in the regional and national economies. *Id.* at 52.

The ALJ states that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles," and, given Plaintiff's "age, education, work experience, and" RFC, he is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.*  The ALJ concludes that Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 13, 2013 through the date of" the ALJ's decision (citing 20 CFR 404.1520(g) and 416.920(g)). *Id.*

### C.    <u>Issues Presented</u>

Plaintiff contends the ALJ erred because his: (1) RFC failed to properly weigh the evidence resulting in an RFC that is not supported by substantial evidence; (2) step three analysis is flawed; and, (3) subjective symptom analysis is not supported by substantial evidence.  ECF No. 22 at 6. The Court considers Plaintiff's second argument first as it stands alone as a reason to remand this case for further proceedings.

### 1.    The ALJ's Step Three Analysis

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. §§ 404.1525, 416.925.  To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.  20 C.F.R. §§ 404.1525(d), 416.925(d).  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "Listed impairments set . . . strict standards because they automatically end the five-step inquiry, before functional capacity is even considered."  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).  Accordingly, the claimant bears the burden of establishing he meets a listing.  *Burch*, 400 F.3d at 683.

The listing impairment at issue is 1.04A, which states:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) … .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

However, as stated above, the entirety of the ALJ's analysis with respect to this step includes only that Plaintiff's "impairments, considered singly or in combination, do not meet or medically equal the criterial of any medical listing."  AR 48.  The basis for this determination is that "[n]o treating or examining physician has recorded findings . . . nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment."  *Id.*

Defendant argues that this finding is sufficient because Plaintiff bears the burden of proof at step three of the sequential evaluation process and "Plaintiff 'must present medical findings equal in severity to <u>all</u> the criterial for the one most similar listed impairment."  ECF No. 25 at 6 *citing Kennedy*, 738 F.3d at 1174 (emphasis in original).  Defendant then goes on to argue what the

Commissioner noted in his finding. However, none of what Defendant argues is found in the Commissioner's determination that Plaintiff fails to meet or equal a listing. *Compare* ECF No. 25 at 6 and AR 48 (top paragraph). Moreover, *Kennedy*, on which Defendant relies, states that when considering whether a Plaintiff equals a listing under step three of the evaluative process, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Kennedy*, 738 F.3d at 1178 *citing Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990). The court in *Kennedy* states that the *Marcia* decision "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion . . . [and] is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* (internal citations omitted). The conclusion in *Kennedy*, which differs from the case at bar, explains that the "ALJ appropriately addressed the issues that Kennedy raised and determined that Kennedy did not meet or equal any listing." *Id.*

Here, as argued by Plaintiff, "[t]he ALJ's Step Three analysis is simply perfunctory as it does not [discuss or] consider any listing or [do any] analysis."[4] ECF No. 22 at 11. Plaintiff cites to *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001) in support of his argument. ECF No. 22 at 11. The court in *Lewis* states "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* at 512 *citing Marcia,* 900 F.2d at 176. Moreover, a review of the *Lewis* decision shows the ALJ did a detailed analysis before reaching conclusions that the plaintiff in that case did not meet or equal any listing. *Id.* at 513-14.

While Plaintiff suggests there is evidence to support the listing upon which he relies, it is an analysis of whether the ALJ's determination was supported by medical evidence later in his decision that determines if remand is appropriate because of the ALJ's failure to provide a detailed examination of Listing 1.04. *See Henderson v. Colvin*, Case No. 14-cv-2779-KAW, 2016 WL 1110247, at *7 (N.D. Cal. March 22, 2016); *Henrichs v. Colvin*, Case No. C15-5361-JCC-DWC,

---

[4] SSR 96-6p was rescinded and is effective March 27, 2017. The ALJ decision at issue was signed on February 27, 2017 (AR 53) and, therefore, SSR 96-6p properly applies to the Court's analysis of the ALJ's decision. The Court also notes that Defendant does not suggest or state the contrary.

2016 WL 750722, at *1-3 (W.D. Wash. Feb. 26, 2016); *compare Conley v. Berryhill*, Case No. 1:16–cv–944–GSA, 2017 WL 4310249, at *8 (E.D. Cal. Sept. 28, 2017) (holding ALJ's error in failing to provide detailed examination of Listing 8.05 at step three was harmless because later evaluation of medical evidence was supported by substantial evidence). In this case, as discussed below, the ALJ's error was not harmless. The ALJ erred when determining that Plaintiff's subjective complaints were not "entirely consistent" with the medical evidence because the ALJ did not support this determination by clear and convincing reasons. The ALJ also erred when he gave any weight at all to the opinions of a single decisionmaker. And, the ALJ erred because, after giving little weight to Plaintiff's treating physician and only some weight to CE Sherman, he failed to set out his reasoning for finding Plaintiff should be limited to performing sedentary work, even with the ALJ's determination that Plaintiff's ability to do so "has been impeded by additional limitations." AR 50 and 52.

### 2.    The ALJ's Analysis of Medical Evidence and Plaintiff's Symptoms

In accordance with the Social Security regulations, the courts have "developed standards that guide our analysis of an ALJ's weighing of medical evidence." *Ryan 8 v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008) (internal citation omitted). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, "greater weight should be given to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), *citing Sprague v. Brown*, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. . . . The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Id.* (internal citations omitted). If the treating physician's opinion on the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, it will be given controlling

weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p (same).  For claims filed before March 27, 2017, as is the case here, "the opinion of a treating physician is [given] greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of an examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.92.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (internal citation omitted).  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.*, *citing Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007).  Further, under the specific and legitimate reasons standard, the ALJ may disregard a treating physician's opinion when it is premised on the claimant's own subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  To satisfy the "substantial evidence" requirement of the specific and legitimate reasons standard, the ALJ should set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretations thereof, and mak[e] findings." *Garrison*, 759 F.3d at 1012, *citing Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Id.* (internal citation and quotation marks omitted).  The ALJ can never arbitrarily substitute his own judgment over the opinion of competent medical professionals. *Tackett*, 180 F.3d at 1102–03.

a.    The Medical Opinions Summarized By the ALJ.

The ALJ notes that Plaintiff has a back injury that showed an encroachment on the L3 nerve root; Plaintiff failed conservative treatment including injections; had lumbar spine surgery in October 2012 that resulted in a delayed dural leak resulting in a second surgery misstated as occurring in March 2013;[5] and, had continued low back pain with increased activity in May 2014 that included a decreased range of motion.  AR 49.  All of the cites in this section of the ALJ's report

---

[5]    Plaintiff's first surgery occurred on October 16, 2012, after more conservative treatment failed, and was a lumbar laminotomy, foraminotomy L3-4, partial facetectomy L3-4 with microdiscectomy. AR 624.  The second, which occurred on February 22, 2013, was the result of a delayed dura leak and a pseudomeningocele.  *Id.*; *see also* 621.

are to healthcare providers at Concentra Medical Center, including orthopedic specialists, who treated Plaintiff over a number of years.  AR 374-742.  The ALJ concludes that (i) Plaintiff's "back pain shows conservative treatment after the surgery and stable findings"; (ii) "in May 2015 … [Plaintiff] reported headaches but no other complaints and was doing well"; (iii) "[p]rogress notes in 2016 showed continued lower back pain, [and p]hysical examination showed lumbar tenderness and decreased range of motion"; and (iv) a "[d]octor suggested facet block injunctions[, i]maging completed in December 2015 revealed L2-L3 mild facet arthrosis; at L3-L4 there was minimal left-side laminectomy, facet arthrosis, right greater than left and mild disc bulging at L5-S1 there was a mild broad-based disc bulge with moderate facet arthrosis ... ."  AR 49-50.  The ALJ further states that Plaintiff has had limited treatment since 2014, and "degenerative disc disease which was stable."  AR 49.

The ALJ discussed a January 15, 2015 evaluation by orthopedic consultive examiner Jerrold Sherman, M.D. ("CE Sherman") who saw Plaintiff once.  AR 746-49.  CE Sherman's report reveals no review of historical medical records.  *Id*.  In sum, CE Sherman found 100% normal range of motion in Plaintiff's neck, in both shoulders, elbows, wrists and small joints of the hands and fingers, no muscle wasting, normal contour of the spine, a well healed scar, otherwise normal reflexes and range of motion in his hips, knees, and ankles, and mild lumbar spine disc narrowing at L3-4.  *Id*. As the ALJ states, CE Sherman found Plaintiff could "sit, stand and walk for four hours of each activity during the course of an eight-hour day, … can frequently lift 10 pounds and occasionally lift 20 pounds."  AR 49 and 748.  The CE also opined that Plaintiff can occasionally forward bend at the waste, squat, kneel, and crawl, as well as having no restrictions on the use of his upper extremities.  *Id*.  The ALJ does not mention, but CE Sherman's report does state that Plaintiff would need to alternate standing and sitting, but that "standard breaks and [a] lunch period [would] provide sufficient relief."  AR 750.  CE Sherman also checked the indication that Plaintiff could stand or walk "at least 2 hours in an 8 hr workday (sedentary)."  *Id*.  CE Sherman did *not* indicate Plaintiff would stand and or walk "about 6 hours in an 8 hr workday."  *Id.*

The ALJ ultimately gave "some weight" to the CE's opinion finding his opinion was consistent with the examination performed, but also deciding to further limit Plaintiff "to sedentary work based on the entire medical file and claimant's statements." AR 50. The ALJ provides no additional explanation for how he reached this conclusion. *Id.*

The ALJ next mentions single decisionmakers ("SDMs") stating that he "has not given significant weight to the determinations of the State agency physical and mental medical consultants (Exhibits 3A, 4A, 5A and 6A)."[6] AR 50 referencing AR 158-191. The ALJ explains that these examiners did not have the benefit of additional evidence and hearing testimony. AR 50. Nonetheless, the ALJ did "take[] into account the limited objective findings" of these SDMs. *Id.*

Finally, the ALJ states that he gave "little weight" to the opinion of Plaintiff's treating physician Dr. Kermani because the opinion "is not supported by objective evidence and it is inconsistent with the record as a whole." The ALJ also stated that Dr. Kermani's conclusion that Plaintiff is unable to work had "no probative value" and was rejected. *Id.*

        b.    <u>Plaintiff's Testimony, report, questionnaire and statement</u>.

A review of the ALJ's Decision (AR 44-53) shows the ALJ summarized Plaintiff's testimony as follows:

- Plaintiff testified that he last worked in 2013; suffers from neck and back pain, suffers depression that is sometimes helped with medication and suffers right hand numbness; AR 48

- Plaintiff is able to prepare simple meals, use the computer, and watch TV; *Id*.

- On March 15, 2013, which is post-lumbar meningocele resection surgery, Plaintiff reported "improvement in his low back pain"; AR 49 citing 596.

- "Plaintiff reported continued low back pain with increased back pain in activity in May 2014"; and, Plaintiff rated his "pain as a 3 on a scale of 0-10." AR 49 citing AR 734; and,

- In May 2015, Plaintiff "reported headaches but no other complaints and was doing well"; AR 50 *citing* AR 776.

---

[6]      Defendant admits that the ALJ references, the single decisionmaker opinions, but contends the ALJ "explicitly" did not afford these opinions any weight. ECF No. 25 at 3. The ALJ's reference to "not giv[ing]… significant weight" to these opinions is not consistent with Defendant's position.

The ALJ also states he considered Plaintiff's April 12, 2015 Function Report (AR 33-45 (Ex. 9E)), Headache Form (AR 346 (Ex 10E)), and Updated Medical Condition Report (AR 355-56 (Ex. 12E)),  but provided no explanation or elaboration of how these reports played into his analysis.  AR 48.

A review of the transcript of Plaintiff's testimony from October 2017 shows that in addition to what is cited by the ALJ, Plaintiff stated:

- After his second surgery in February 2013, he's "been going through therapy, injections, things like that" and "still … [has] a lot of pain"; AR 144

- Has headaches especially when he bends, for which he is seeking testing; *Id*.

- He can lift five or ten pounds, but he does not bend to lift; *Id*.

- He does not lift more than five to ten pounds because it strains his back to do so; *Id*.

- He can maybe walk a quarter of a mile; AR 145

- If he walks more than that he gets pain in his foot and numbness, which he believes comes from his back, and sometimes he becomes lightheaded; *Id*.

- He has headaches three to four times a week; *Id*.

- The headaches are considered migraines, can last one hour to all day, but he takes over the counter medications for these symptoms; AR 145-46

- Doctors continue to do tests to determine if the spinal leak, which resulted in the second surgery has stopped; AR 146

- He has a pinched nerve and herniated disc that cause left shoulder problems (the ALJ and counsel noting that records from Dr. Kermani are missing regarding this issue); AR 146-47

- The shoulder problem cause numbness in Plaintiff's hand and limits his ability to turn his neck to the left; AR 147

- He is being treated for depression with Clonazepam and Tanazadene [phonetically spelled], which "helps some"; AR 148[7]

- He can sit 30 to 45 minutes at a time and, if alternating sitting and standing, he could do that a total of 1.5 hours in an eight hour day; AR 152-53

- After sitting and standing for 1.5 hours he must lie down or he gets a headache or he takes medication "usually every four hours or so."  If he lies down, he must do so for two to three hours.  The medication causes sedation.  AR 153

---

[7]    The Court believes this is Tizanidine, which is a short acting medication taken for daily activities that require relief from muscle spasticity.  https://www.webmd.com/drugs/2/drug-1024/tizanidine-oral/details

Further, a review of Plaintiff's reports (Exs. 9E, 10E, and 12E), referenced but not discussed by the ALJ, show that Plaintiff reported severe headaches, and inability to sit for too long, numbness if he sits too long, but he manages, sciatica, back pain in extremities, taking over the counter and prescription medications (including hydrocodone for headaches (AR 346)), dizziness caused by standing too long, being lightheaded, having balance issues, cooks using a microwave or crockpot (he rarely uses a stove top), does laundry once every two weeks, does no yard work, watches TV and uses a computer to pay bills (rarely uses check or money orders now), he has eye problems now, mostly uses a phone to interact with others and interacting with others in person once or twice a week, his illness and injuries affect all function areas on AR 343 except talking and hearing, and that he is depressed and frustrated because he will "never be the same." AR 344. Plaintiff also reports he is "scared of deteriorating more, … being alone, and starving" (*id*.) and goes nowhere on a regular basis (AR 342) because he does not feel like going out. *Id*.

          c.   <u>The ALJ Erred When He Determined that Claimant's Subjective Complaints Are Not "Entirely Consistent" with the Medical Evidence Because The Determination Is Not Supported by Clear and Convincing Reasons.</u>

When considering Plaintiff's symptoms the ALJ must follow a two-step process that requires he first determine if there is an underlying medically determinable physical or mental impairment, that could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc)). At the second step, the ALJ must assess the credibility of the claimant's subjective complaints; appropriate considerations include (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996). "[If] there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). An ALJ's finding on this matter must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not

1    "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 948, 958

2    (9th Cir. 2002) (citation omitted). The ALJ is instructed to "consider all of the evidence in an

3    individual's record … [to] determine how symptoms limit ability to perform work-related activities."

4    SSR 16-3p, 2016 WL 1119029, at *2. Notwithstanding, a claimant's statements about his pain or

5    other symptoms alone will not establish that he is disabled. 20 C.F.R. § 416.929(a)(1); 42 U.S.C. §

6    423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive

7    evidence of disability."). A claimant is not entitled to benefits under the Social Security Act unless

8    the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Strauss v.*

9    *Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). But, an ALJ may not discredit

10   Plaintiff's symptom testimony and deny benefits solely because the degree of the symptoms alleged

11   is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

12   2001); *Bunnell*, 947 F.2d at 346–47; *Fair*, 885 F.2d at 601.[8]

13       At step one of this process, the ALJ found that Plaintiff's "medically determinable

14   impairments could reasonably be expected to cause the alleged symptoms" complained of. AR 48.

15   However, at the second step of the process, the ALJ found that Plaintiff's statements concerning

16   "intensity, persistence and limiting effects of those symptoms are not entirely consistent with the

17   medical evidence and other evidence in the record …" AR 48-49; *see also* AR 51 ("[t]he objective

18   medical evidence does not support the alleged severity of symptoms" reported by Plaintiff). The

19   ALJ provides no reasons for discounting Plaintiff's report of intensity, persistence, and limiting

20   effects of his symptoms other than some inconsistency with medical evidence. *Id.*

21           i.    *The ALJ fails to provide clear and convincing reason for discounting*
22                 *Plaintiff's statements concerning the intensity, persistence, and*
                   *limiting effects of his symptoms.*

23       While it is true that Plaintiff experienced periods of improvement, other than noting that he

24   considered Plaintiff's 2016 function report, headache questionnaire, and statements (AR 48), the

---

[8]        An error is harmless where the ALJ lists additional reasons, supported by substantial evidence, for discrediting
Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008);
*Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided
one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported
by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the
ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the
ALJ's ultimate conclusion that the claimant's testimony was not credible).

ALJ does not discuss the content of these reports and statements at all; there is nothing in his decision evidencing that this content had any impact whatsoever on his determination. Moreover, the ALJ does nothing more than summarize (i) the May 2012 finding that Plaintiff suffers from a disc protrusion that "encroaches upon the existing right L3 nerve root" (AR 49 citing AR 466); (ii) that Plaintiff failed conservative treatment and then underwent two surgeries – the second to fix a problem caused by the first (AR 49 citing AR 574 stating that Plaintiff is totally temporarily disabled as of January 18, 2013, and AR 592 discussing second surgery as of March 8, 2013 when Plaintiff is again determined to be totally temporarily disabled); (iii) noting Plaintiff's improvement immediately following his second surgery (AR 49 citing AR 596 and 632); (iv) the December 2013 report showing Plaintiff was now suffering a decreased range of motion in his lumbar spine (AR 49 citing AR 383 (stating Plaintiff should engage in "No activity") and AR 384 prescribing physical therapy); (iv) the May 5, 2014 report, which states that Plaintiff's Patrick and Gaenslen tests are positive, tightness in Plaintiff's paraspinal region, tightness in the lumbar paraspinal and quadratus lumborum musculature, intersegmental joint restriction in the thoracic and lumbar spine, pelvic imbalance, 3 level disc bulges, possible nerve root encroachment, and mild dural compression;[9] (v) the January 2015 CE Sherman report finding (AR 746-752) discussed above; (vi) a single visit to Dr. Joffe, who Plaintiff saw when he was seeking a new primary care physician (AR 776-77); and (vii) an October 3, 2016 report from Nevada Comprehensive Pain Center, which the ALJ partially represents (AR 50), but which states that Plaintiff reported pain as 8 out 10, and only 40% pain relief from medication, and at which Ostler found Facet Loading produced concordant pain, SLR was positive on the right and negative on the left, and FABERs elicited back pain on the right. *See* AR 798-801.[10]

The ALJ does not cite (i) the October 4, 2013 Permanent and Stationary Report from Concentra that found Plaintiff's "maximum continuous sitting" should be limited to no more than

---

[9]    In comparison to this summary, the ALJ states "[t]he physical examination showed lumbar tenderness and decreased range of motion … ." AR 49.

[10]    The ALJ also mentions a shoulder impairment, hand numbness and a history of a leg fracture (AR 46), but does not discuss these conditions subsequently in his findings as he concludes they are "being managed medically, and should be amenable to proper control by adherence to recommended medical management and medical compliance." *Id.* The ALJ further notes that there was no "aggressive treatment … recommended or anticipated for these conditions." AR 47.

one hour (AR 693), which was confirmed by Dr. Craemer's finding (AR 706) who also stated that Plaintiff has a "very stiff lumbar spine" (AR 710); (ii) the June 2016 report by Dr. Kunal Parikh from Nevada Comprehensive Pain Center finding Plaintiff had lumbar spondylosis, lumbar post-laminectomy syndrome, lumbar radiculopathy, and lumbar disc displacement (AR 808); or (iii) the September 2016 Discharge Summary from Plaintiff's physical therapy stating that Plaintiff has improved including "[s]itting > 30 minutes," but "continues to present with impairments involving ROM, Soft Tissue Mobility, Flexibility, Pain, Joint Mobility.  These deficits limit patient's ability to perform these tasks:  Ascending stairs, Bending, Emptying dishwasher, making bed, Lifting from floor, Walking community distances." AR 824.[11]

In fact, while the ALJ broadly summarizes medical evidence at AR 49-50, he does not explain how Plaintiff's ongoing consistent reports of pain, which at times is stated by Plaintiff to be a debilitating limitation on functioning, resulted in a finding that Plaintiff's report of intensity, persistence, and limiting effects was inconsistent with medical evidence.  The path the ALJ followed is not discernable here as he identifies no medical evidence upon which he was entitled to rely that supports his conclusion.  More specifically, having given only "some weight" to CE Sherman, "little weight" to Dr. Kermani, one of Plaintiff's treating physicians, and assigning no identifiable weight to Concentra medical opinions or Nevada Comprehensive Pain Center (AR 49- 50) the ALJ fails to set forth reasoning behind a decision that allows for a meaningful review of his findings.  *Libby L.A. v. Comm'r Soc. Sec.*, Case No. 3:19-CV-05291-DWC, 2019 WL 5587211, at *4 (W.D. Wash. Oct. 30, 2019) *citing Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Defendant argues that the ALJ found that Plaintiff's course of treatment was "contrary" to his subjective allegations of disability, citing to AR 49.  The ALJ opinion at AR 49 includes the conclusion that Plaintiff received conservative treatment after surgery and was stable, but the records from Concentra, to whom the ALJ failed to identify as afforded any level of weight (AR 49), and

---

[11]       It is worth noting that the ALJ cites to Plaintiff's report that he can "prepare simple meals, use the computer and watch television" (AR 48), the ALJ never discusses how much of the day Plaintiff can spend in any of these activities or how this activity translates into work activities.  Thus, this single sentence by the ALJ does not constitute specific clear and convincing reasons for finding Plaintiff's testimony inconsistent with medical evidence.  *Exparza v. Colvin*, 631 Fed.Appx. 460, 462 (9th Cir. 2019) (citations omitted).

Nevada Comprehensive Pain Center, also treating physicians (AR 50 citing AR Ex. 9F found at 797-882) to whom the ALJ again failed to identify as accorded any weight, show Plaintiff continued in sufficient pain to seek treatment that belies the conclusion that Plaintiff was "stable."

As explained in *Carmickle*, *supra*, n.10, 533 F.3d at 1160 the Ninth Circuit has "consistently held that where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons." (Internal citation and quote marks omitted.) Further, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Id*. at 1162 *citing Orn*, 495 F.3d at 638. Here, as Plaintiff argues, treatment would be conservative after two back surgeries, the second caused from injury resulting from the first, and pain continues to persist. ECF No. 22 at 14. Defendant did not respond to this argument.

The ALJ is solely responsible for evaluating Plaintiff's testimony and resolving ambiguities that may be in the record (*Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)) as Defendant claims, but the ALJ never states he has any concern with Plaintiff's credibility; nor does he identify any statements by Plaintiff that are less than fully credible. There are no specific references by the ALJ to Plaintiff's testimony that are inconsistent with objective medical evidence; rather, the ALJ says only that Plaintiff's reports of continued problems are "not entirely consistent with the medical evidence." AR 49-50. Importantly, there is absolutely no argument that Plaintiff was a malingerer.

SSR 16-3 provides that the disability "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." In sum, the ALJ's finding that Plaintiff's testimony and statements are "not entirely consistent" with the medical evidence and other unidentified evidence is the only basis upon which the ALJ relies, and the ALJ does not provide clear and convincing *reasons* for finding Plaintiff's symptom testimony not credible. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346–47; *Fair*, 885 F.2d at 60; *see also Elizabeth S v. Comm'r Soc.*

18

*Sec.*, No. 4:17-CV-5162-FVS, 2019 WL 7819655, at *4-6 (E.D. Wash. Feb. 11, 2019). The ALJ

fails to meet the clear standard of "specific, clear and convincing reasons" for rejecting Plaintiff's

testimony regarding the severity and persistence of his symptoms and, for this reason, this matter

shall be remanded for further proceedings. *Smolen*, 80 F.3d at 1281-82; *Orn*, 495 F.3d at 637-39.

ii.    *The ALJ's report is internally inconsistent and he erred when failing to consider Plaintiff's consistent reports of depression.*

The same issue exists with respect to the ALJ's finding regarding Plaintiff's mental health.

The Ninth Circuit holds that:

> it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

The ALJ does not discuss the waxing and waning of Plaintiff's reported depression and is

internally inconsistent when he reports Plaintiff's depression as part of a severe combination of

impairments, as well as when Plaintiff was found sad and depressed in September 2015 and

diagnosed with "major depressive disorder," and then states that his mental status examination in

2016 was "mostly normal."[12] AR 46, 48-50. *Id*. The ALJ is also inconsistent when he concludes

that "based on the minimal and unremarkable mental health evidence in the record, … [Plaintiff]

had no severe mental impairment." AR 47.

A review of the record shows that after the psychiatric evaluation on September 18, 2015,

with Grand Desert Psychiatric Services, which diagnosed Plaintiff with "Major Depressive Affective

Disorder, Recurrent Episode, Severe, without … Psychotic Behavior (AR 758), Plaintiff was seen

by an LCSW on September 28, 2015, who confirmed Plaintiff's "mood was depressed and affect

flat" but who otherwise declined to treat Plaintiff because she did not take Plaintiff's insurance and

Plaintiff could not afford to pay on a sliding scale. AR 760. Nevertheless, on October 2, 2015,

Plaintiff was seen again at Grand Desert. AR 762. Plaintiff reported "slight improvement in

---

[12]    There is no mental health progress note from January 2016. Rather, this is an "Adult Assessment Summary" from Resource Family Center. AR 781-788.

symptoms since beginning medication," which he had only been taking for a week.  *Id*.  Plaintiff reported feeling "depressed with lack of energy, no motivation, hopeless feeling and has feelings of worthlessness."  AR 762.  Plaintiff was again diagnosed with "Major depressive disorder, recurrent severe without psychotic features."  AR 764.

Plaintiff was next seen at Resource Family Services on January 22, 2016 (AR 781-796) for an Assessment and again diagnosed with depression and grief (785-86).  The Adult Assessment Summary shows that Plaintiff was depressed, withdrawn and sad, and the "degree of interference with functioning" was "significant."  AR 781.  The notes also reflect Plaintiff feels hopelessness and guilt about a cousin who was recently supposed to visit him.  *Id*.  Finally, Plaintiff was seen by Well Care Services (AR 767-773).  The first note provided is from May 25, 2016, and diagnoses Plaintiff with major depression, recurrent, and an anxiety disorder.  AR 773.  On June 22, 2016, Plaintiff was seen again at Well Care where it is reported that his sleep is "okay," depression is "some" "same," and anxiety is "okay most of the time."  AR 770.  On his last visit, the notes reflect that his medication is helping, Plaintiff is feeling better, his anxiety is better, he has a new CPAP machine that is helping with sleep apnea, and he is eating well.  AR 768.

However, Plaintiff testified in October 2016 that he remained depressed and was taking medication that is only "help[ed] … some."  AR 148.  Plaintiff also completed a function report in which he stated he keeps himself "isolated" and avoids conflict; he is depressed; and does not "interact well"; is "[d]epressed, frustrated, … scared of deteriorating more, … being alone, starving, … [and] that pains means "I'll never be the same ... ."  AR 344.

Plaintiff argues that the ALJ's findings that Plaintiff's mental status was mostly normal is error, and that the findings were also contradictory.  ECF No. 22. at 16.  Defendant argues that a state agency psychologist (Paul Klein) reviewed Plaintiff's mental impairments and found there were none.  ECF No. 25 at 2 citing AR 172.  The document at AR 172 is part of a reconsideration review of the denial of Plaintiff's DIB determination.  AR 166-178.  It is unclear if Klein is, in fact, a doctor, but even assuming he is, Klein would at best be a nonexamining physician.  *Id*.  His opinion, if not barred entirely from consideration because he is a single decisionmaker (*see* below Section 2.d), would be entitled to the least amount of weight.  *Pitzer v. Sullivan,* 908 F.2d 502, 506, n. 4 (9th

1   Cir.1990.  Moreover, to the extent the ALJ relied on Klein's opinion (which is not cited, but falls

2   within Exhibit 5A referenced in the ALJ opinion at AR 50), it is inconsistent with the ALJ's finding

3   that Plaintiff's depressive disorder was severe.  AR 46.

4        The ALJ's opinion that Plaintiff's depressive disorder is severe is internally inconsistent with

5   the ALJ's statement that Plaintiff's mental impairments cause no more than mild limitations, never

6   mentioning Plaintiff's substantial reports to the contrary together with the consistent diagnosis that

7   Plaintiff was severely depressed.  When evaluating a claimant's symptom claims an ALJ may

8   consider the consistency of an individual's statements made in connection with the disability review

9   process and any other existing statements or conduct under other circumstances.  *Smolen*, 80 F.3d at

10  1284.  Despite this ALJ authority, Social Security Regulations states that "inconsistencies in an

11  individual's statements made at varying times does not necessarily mean they are inaccurate.

12  Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve

13  over time."  SSR 16-3p, 2016 WL 1119029, at *8.  The ALJ did not consider the consistency of

14  Plaintiff's claims of depression or its limiting effect on his functioning.  The entirety of his opinion

15  is devoid of any discussion except to make the general statement that he "also consider[ed] … the

16  claimant's subject complaints."  AR 50.  The ALJ's internal inconsistency in his decision coupled

17  with the ALJ's failure to illuminate the basis for finding Plaintiff's "subjective complaints … not

18  consistent with the entirety of the medical record" warrant remand.  *Perez v. Astrue*, 250 Fed.Appx.

19  774, 776 (9th Cir. 2007) (remanding in part because the ALJ's findings were "internally

20  inconsistent") (unpublished); *Rodriguez v. Astrue*, 2011 WL 1103119, at *9 (E.D. Cal. Mar. 22,

21  2011) ("[R]emand for further proceedings is proper due to the ambiguity of the ALJ's decision....");

22  *Elias v. Astrue*, No. CIV 10-244-TUC-CKJ, 2011 WL 1329967, at *1 (D. Ariz. Mar. 9, 2011), at *7

23  (finding the ALJ's decision not supported by substantial evidence and recommending remand

24  because the ALJ's decision was "internally inconsistent"), *report and recommendation adopted*, No.

25  CIV 10-244-TUC-CKJ, 2011 WL 1322083 (D. Ariz. Apr. 7, 2011); *Gonzalez v. Astrue*, No. CV 08-

26  6957-CT, 2009 WL 577279, at *3 (C.D. Cal. Mar. 5, 2009) ("[R]emand is necessary for

27

28

the ALJ to clarify the ambiguity within his opinion...."); *Chenault v. Astrue*, No. CV 07-7690-E, 2008 WL 2705573, at *1-3 (C.D. Cal. July 10, 2008) (remanding because the ALJ's findings were "internally inconsistent").

     d. <u>ALJ erred when he gave any weight to single decisionmaker evidence.</u>

  Courts in the Ninth Circuit repeatedly hold that an ALJ may not accord any weight to the opinion of a non-physician single decisionmaker ("SDM" or "SDMs"). *Elizabeth S.*, at *6; *Morgan v. Colvin*, 531 Fed. Appx. 793, 794-95 (9th Cir. 2013) both *citing* Program Operations Manual System DI 24510.050.

  In this case, the ALJ stated he "considered *but has not given significant weight* to the determinations of the State agency physical and mental consultants" *citing* Exs. 3A, 4A, 5A, and 6A, all of which were reports and opinions issued by SDMs.  AR 50 *citing* AR 158-191 (excluding reports from Paul Klein) (emphasis added).  The ALJ further states that his "residual functional capacity determin[ation] … takes into account the limited objective findings … ." AR 50.  The ALJ's second statement, together with the first, confirms he has considered and taken into account opinions of SDMs when reaching his RFC determination.  This was a clear error of law.  And, while the ALJ states that, in addition to taking these "limited objective findings" into account he also considered Plaintiff's "subjective complaints," the consideration of Plaintiff's subjective complaints do not render the error harmless.  This is further confirmed by the fact that the ALJ fails to identify what, if any, weight he accorded Plaintiff's healthcare providers at Concentra and Nevada Comprehensive Pain Center to which he cites at AR 50, and affords only some weight to CE Sherman (*id.*), and little weight to Dr. Kermani (*id.*).  In sum, because it is unclear on what the ALJ did actually rely when rendering his determination, the Court cannot say the ALJ's error was inconsequential to the ultimate nondisability determination *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and quotation marks omitted).

e.    The ALJ failed to build an accurate and logical bridge from the evidence to his conclusions.

i.    *The ALJ did not err when he afforded Dr. Kermani's opinion little weight.*

The Administrative Record shows that at the time of the hearing on October 27, 2017, records from Dr. Kermani were missing.  AR 140.  Counsel for Plaintiff indicated he was working to obtain those and Plaintiff had an appointment with Dr. Kermani "in the next 15 days."  AR 140.  The ALJ thereafter gave Plaintiff 30 days to obtain and submit additional records from Dr. Kermani.  AR 141.  However, the Administrative Record reflect only two substantive pages of medical records from this treating physician.  AR 874-75.  The Court does not know if records were received after the extension offered by the ALJ and Plaintiff does not raise additional medical records as an issue on appeal.  Hence, this issue is waived.  *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (a court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Plaintiff argues that the ALJ's three reasons for giving Dr. Kermani's opinions little weight fail the "substantial evidence" requirement of the specific and legitimate reasons standard the ALJ must meet when rejecting a treating physician opinion.[13]  ECF No. 22 at 9.  The ALJ's reasons includes that: (1) Dr. Kermani's opinion "is inconsistent with the record as a whole"; (2) Dr. Kermani did not provide an explanation for his assessment of any specific functional limitation that prevented Plaintiff from working; and (3) Dr. Kermani "primarily summarized" Plaintiff's "subjective complaints, diagnoses, and treatment, but did not provide objective clinical or diagnostic findings to support the functional assessment."  AR 50.

Plaintiff argues that Dr. Kermani did provide an explanation for his assessment of Plaintiff.  ECF No 22 at 9 citing AR 874.  Defendant argues that Dr. Kermani's opinion consists "of a pre-

---

[13]    As stated above, as a treating physician, Dr. Kermani is entitled to greater weight than that of an examining physician; however, if the treating physician's opinion is contradicted by "another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence."  *Garrison*, 759 F.3d at 1012 (internal citation omitted).  Under the specific and legitimate reasons standard, the ALJ may disregard a treating physician's opinion when it is premised on the claimant's own subjective complaints.  *Fair*, 885 F.2d at 605 (9th Cir. 1989).  To satisfy the "substantial evidence" requirement of the specific and legitimate reasons standard, the ALJ should set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretations thereof, and mak[e] findings."  *Garrison*, 759 F.3d at 1012, (citation omitted).  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' are correct."  *Id.* (internal citation and quotation marks omitted).  The ALJ can never arbitrarily substitute his own judgment over the opinion of competent medical professionals.  *Tackett*, 180 F.3d at 1102–03.

printed RFC form that included no attached evidentiary support." ECF No. 25 at 4. Defendant further states that Dr. Kermani's finding of motion weakness, the only objective finding Dr. Kermani made according to Defendant, does not explain why Plaintiff needs more than "two unscheduled breaks" a day, will "miss more than four days of work" a month, or "would not be able to perform sedentary work." *Id.*

Dr. Kermani's "Treating Physician Medical Source Statement," dated November 9, 2016 (AR 873- 75) shows Plaintiff can sit for four hours a day, 45 minutes at a time, stand/walk one hour per day, fifteen minutes at a time, can lift a maximum of 10 pounds, can rarely kneel, crouch or squat, and can occasionally climb ramps/stairs, ladders/scaffold, balance, stoop/bend. AR 874. Some of this, as Plaintiff argues, is consistent with the opinions of CE Sherman, who states Plaintiff can sit less than 6 hours of an 8 hour workday and can cumulatively sit, with usual breaks, a maximum of 4 hours. *Compare* AR 750 and AR 874. Thus, Dr. Kermani and CE Sherman agree that Plaintiff is able to sit a maximum of four hours each work day.

Dr. Kermani further stated that Plaintiff would need more than two unscheduled breaks in the course of an eight hour day, and would be absent more than four days per month. AR 875. This opinion is somewhat contradicted by CE Sherman who states that "standard breaks and lunch period" will provide sufficient relief to Plaintiff who needs to alternate between sitting and standing. AR 750. Dr. Kermani and CE Sherman agree that Plaintiff can frequently lift 10 pounds, and occasionally climb ramps/stairs, ladders/scaffolds, stoop/bend, and balance. AR 750 and 874. These doctors disagree on the maximum amount of weight Plaintiff can lift (Dr. Kermani stating 10 pounds and the CE Sherman stating 20), as well as how often Plaintiff can crouch, squat and crawl (Dr. Kermani stating rarely and CE Sherman stating occasionally), but otherwise, there is no disagreement on Plaintiff's capabilities. *Comparing* AR 750 and 874.

While Dr. Kermani opines that Plaintiff's degenerative disc disease was "still troublesome despite two surgical interventions" on his Treating Physician Medical Source statement (AR 874), CE Sherman states his "impression" as "[l]ow back pain complaints status-post intervertebral disc surgery and surgery to repair a dural leak with residual back pain complaints and some soft tissue swelling without neurological deficit but some demonstrated limited spine motion." AR 748.

1    The ALJ states that Dr. Kermani's opinions were not supported by objective evidence, but

2    this is only partially true.  On the September 2016 Discharge Summary from Plaintiff's physical

3    therapy it states that Plaintiff has improved including "[s]itting > 30 minutes," but "continues to

4    present with impairments involving ROM, Soft Tissue Mobility, Flexibility, Pain, Joint Mobility.

5    These deficits limit patient's ability to perform these tasks: Ascending stairs, Bending, Emptying

6    dishwasher, making bed, Lifting from floor, Walking community distances." (AR 824).  On the

7    October 2016 report by Josh Ostler PA-C, from Nevada Comprehensive Pain Center, Plaintiff

8    reported pain as 8 out 10, and only 40% pain relief from medication, and at which Ostler found Facet

9    Loading produced concordant pain, SLR was positive on the right and negative on the left, and

10   FABERs elicited back pain on the right.  AR 798 and 800.  Ostler also reported "decreased lumbar

11   ROM due to pain, worse with extension," ultimately recommending that Plaintiff "may benefit from

12   lumbar facet injections … ."  AR 800.  This demonstrates that Dr. Kermani's opinions, while perhaps

13   brief, are not based on the mere existence of an impairment and are not wholly contradicted by CE

14   Sherman.

15   Importantly, however, the conclusions on AR 875 by Dr. Kermani are not supported by any

16   evidence.  These conclusions, which are critical to the ALJ's analysis, include that Plaintiff's

17   symptoms would prevent him from concentrating for more than two hours in an eight hour workday,

18   Plaintiff would need more than two hours of unscheduled breaks a day, and Plaintiff would miss

19   more than four days per month.  *Id.*; AR 50.

20   A medical opinion may be rejected if it is unsupported by medical findings.  *Bray v. Comm'r

21   of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957; *Tonapetyan v.

22   Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  An ALJ may also discredit physicians' opinions that

23   are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, an ALJ is not

24   obliged to credit medical opinions that are unsupported by the medical source's own data and/or

25   contradicted by the opinions of other examining medical sources.  *Tommasetti v. Astrue*, 533 F.3d

26   1035, 1041 (9th Cir. 2008).  Relevant factors to evaluating any medical opinion include the amount

27   of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion,

28   and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504

25

F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Put another way, incongruity between a doctor's medical opinion and treatment records or notes is not a reason to discount a doctor's opinion.  *Tommasetti*, 533 F.3d at 1041.  This is because a provider's observations must be "read in the context of the overall diagnostic picture" the provider draws.  *Holohan v. Massanari*, 246 F.3d 1195, 1205. (9th Cir. 2001).

Here, the ALJ's determination to give treating physician Dr. Kermani's opinions little weight is entitled to deference because his conclusion is subject to more than one rational interpretation. *Baston v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1198 (9th Cir. 2004).

*ii.    ALJ fails to explain on what his opinion is based.*

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."  *Garrison*,  759 F.3d at 1012, *citing Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir.1996).  "An ALJ's decision to ignore medical evidence and substitute his or her own views for such an opinion is erroneous.  As a lay person, the ALJ simply is not qualified to interpret raw medical data in functional terms.  A case record must provide some support for the specific limitations found by an ALJ.  If an ALJ rejects all record opinions indicating limitations, the 'evidentiary deficit' that leaves cannot be filled by the ALJ based on his or her lay opinion of RFC."  3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:62 (2nd ed.) (internal footnotes omitted).

What is troubling to the Court is that, given the little weight afforded to treating physician Dr. Kermani (AR 50), "some weight" afforded to CE Sherman (*id.*), no identified weight given to any other health care provider whose opinion the ALJ was entitled to consider (AR 49-50), reliance at some level on single decisionmakers (AR 50), the failure to discuss Plaintiff's very limited daily activities,[14] inadequately supported finding that Plaintiff's physical symptom reports were not "entirely consistent" with the medical evidence (AR 48, 50-51), and internally inconsistent determination regarding the severity of Plaintiff's depression (AR 46, 47, 49, 50), on what did the

---

[14]        With respect to Plaintiff's "admitted activities of daily living," the ALJ reports these as preparing simple meals, use of a computer, and watching television.  AR 48, also referenced at AR 50.  But, other than stating this conclusion, the ALJ provides no explanation for the basis of his conclusion.

ALJ rely to conclude that Plaintiff "has not been deprived of the ability to perform work subject to the residual functional capacity assessed by" the ALJ "for any 12-month period since the alleged onset date?" AR 51. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Garrison*, 759 F.3d at 1012 (internal citation and quotation marks omitted). "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec.,* 169 F.3d 595, 602 (9th Cir.1999). Further, even if the contrary were true, the ALJ only gave CE Sherman's opinion "some weight."

In sum, the ALJ falls far below the level of specificity required in the Ninth Circuit for the weighing of evidence. "The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." *Tackett*, 180 F.3d at 1102 (internal citation omitted).

### 4.    The ALJ's Step Five Analysis.

Because at step four the ALJ found Plaintiff not able to do his past relevant work, the ALJ moved on to do an analysis under step five. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work, and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. (internal citation omitted). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that

are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (internal citation and quotation marks omitted). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes*, 881 F.2d at 756–57; *Martinez*, 807 F.2d at 773. A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

Here, the ALJ proposed the following hypothetical:

> An individual who can lift 10 pounds occasionally, five pounds frequently. This person can stand and walk up to two hours a day. Two hours in eight. Sit up six hours of eight. This person would have occasional postural limitations all, but no climbing of ladders, ropes, and scaffolds. … This person would need simple, repetitive tasks because of ongoing depression. … Would there be any jobs this individual could do?

AR 151. In response, the VE stated the hypothetical person could be a jewelry preparer, document preparer, and order clerk. AR 151-52 (each job identified by its DOT designation). If this hypothetical is offered to include the ALJ's finding that Plaintiff is limited to "sedentary work based on the entire medical file and the claimant's statements" (AR 50), it fails to take into account that SSR 96-9p states, *inter alia*, that "[j]obs are sedentary if … in an 8-hour workday[, … s]itting would generally total about 6 hours of an 8-hour workday. …" However, CE Sherman, who received the most weight of any health care provider cited by the ALJ (receiving some weight – AR 50), states Plaintiff "is able to sit … four hours … during the course of an eight-hour day … ." AR 748; *see also* AR 750 stating Plaintiff can sit less than six hours in an eight hour workday, with a notation that four hours is how many hours he is able to sit; *see also* AR 874 in which Dr. Kermani, given little weight by the ALJ, agrees that Plaintiff can sit four hours in an eight hour work day. As Defendant admits, the vocational expert never considered "whether an individual … [who] could 'sit, stand and walk for four hours of each activity' could still perform substantial work activity." ECF No. 25 at 10. Further, as discussed by Plaintiff when asked how missing even just two days a

month because of headaches, which are reported to have "an organic objective cause" for Plaintiff (AR 717), would affect his ability to work, the vocational expert stated there would be no work Plaintiff could perform.  AR 153-54.

## V.    CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case.  42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation."  *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004).

Here, the ALJ erred when determining that Plaintiff's subjective complaints were not "entirely consistent" with the medical evidence because the ALJ did not support this determination by clear and convincing reasons.  The ALJ also erred when he gave any weight at all to the opinions of a single decisionmaker.  And, the ALJ erred because, after giving little weight to Plaintiff's treating physician and only some weight to CE Sherman, he failed to set out his reasoning for finding Plaintiff should be limited to performing sedentary work, even with the ALJ's determination that Plaintiff's ability to do so "has been impeded by additional limitations."  The ALJ also erred by improperly framing the hypothetical question for the vocational expert.

## IV.    REMEDY REQUEST

Plaintiff asks the Court to apply the credit-as-true test and reverse or remand the Commissioner's denial of benefit.[15]  However, the Court finds the credit-as-true test is not met and that further administrative proceedings would serve a useful purpose in this matter because the record is not fully developed, and is not free from conflicts and ambiguities.

---

[15]        The Ninth Circuit, "not convinced that the 'crediting as true' doctrine is mandatory," has exercised flexibility on other occasions and "remanded solely to allow an ALJ to make specific credibility findings."  *Connett*, 340 F.3d at 876.  That being said, "*Connett*'s 'flexibility' is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.  Here, there is no serious doubt that Plaintiff is disabled under the Social Security regulations, and therefore, the Court applies the credit-as-true standard to this case.

## VI.     RECOMMENDATION

IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Summary Judgment be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that Plaintiff's request for reversal and an award of immediate benefits be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's request for remand for further proceedings be GRANTED pursuant to 42 U.S.C. § 405(g).

IT IS FURTHER RECOMMENDED that Defendant's Cross Motion to Affirm (ECF No. 22) be DENIED.

DATED this 6th day of March, 2020.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).